# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON
## DIVISION ONE

CRYSTAL RIDGE HOMEOWNERS
ASSOCIATION, a Washington
a Washington nonprofit corporation; J.
ABULTZ, LAURIE AND WILSON AMARAL,
CRAIG ARNO, CARON BEAR, JOSEPH N.
BECK, DAVID BENNETT, GLORIA BLADES,
DUANE AND GWEN BOWMAN, THOMAS
CYNDY BOYER, JEFF AND KERI BROWN,
DON COLEMAN, DON DACHENHAUSEN,
ANH-VIET AND LISA DANG, BRAD AND
JULIE DELUCA, BELARMINO DIAZ, GARY
JOHANN FELT, NICHOLAS AND MYUNG FIX
BARRY AND BONNIE FRETWELL,
TATSUICHIRO FURUKAWA, MARGARET
CHRIS GAZEY, PHILL AND ANNE HASTINGS,
LINDA AND JEROME HODGES, RAYMOND
AND PAM HUTCHINSON, JAZ JANG, PETER
AND BEVERLY JOHNSON, STEVE AND
MANTI JOLLENSTEN, JAMES AND MAILLE
KESSENICH, KRISTI AND BRIAN KING,
VICKI AND JOHN KLEIN, CORRIE KRAP,
JOHN AND DEBBIE LAMB, RICHARD AND
JANET LARSON, JEFF LONGAKER, LYNNE
and ROBERT LUCKEY, TOM McKEY,
MICHAEL MEYER, DAWN MONCALIERI,
PHYLLIS AND WAYNE MURPHY, BRUCE and
KATHERINE NGUYEN, KATHLEEN AND
CLIFFORD OCONNELL, CHOON PARK,
STEVEN PFISTER, RUSSELL AND PAULINE
PORTER, LARRY AND JANICE RENDAHL,
CRAIG AND KAREN RENFROW, PAUL AND
DIANE ROBERTS, MARGARET ROMANO,

No. 68618-6-I

UNPUBLISHED OPINION

FILED: July 22, 2013

2013 JUL 22 AM 11: 08
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

STEVEN RUBENSTEIN, AARON and )
SHAUNA RUCKMAN, FAYE SCANNELL, )
BEN and JACLYN SETTER, MARIANNE )
SHAW, JOHN AND KARIN SHIPMAN, )
DONALD AND MARY SIDES, JOHN )
and NORMA SMITH, RICHARD )
SMITH, SCOTT and SHARI TRAIL, )
JOHN TRAXLER, DEAN AND MARIE )
VAUGHAN, DIANE WING, KENNETH )
and LEA WOOD, MARIA WYATT, )
                                  )
             Respondents, )
                                  )
     v. )
                                  )
CITY OF BOTHELL, a municipal )
corporation, )
                                  )
                Appellant. )

SPEARMAN, A.C.J. — At issue in this case is an interceptor pipe, buried 12 feet below ground as part of a drainage plan for a development called Crystal Ridge in the City of Bothell. The Crystal Ridge Homeowners Association sued the City after the pipe allegedly failed and contributed to flooding. The Association argued the City was responsible for maintenance of the pipe because the plat for the Crystal Ridge development dedicated the pipe to what was then unincorporated Snohomish County as part of a drainage easement depicted upon the plat application. The trial court agreed and granted summary judgment to the Association.

The plat dedicated an easement for the purpose of maintaining "stormwater facilities." Because the interceptor pipe qualified as such a facility under the provisions

of the Snohomish County Code in place at the time the plat application was approved, we affirm the trial court.

## FACTS

This case arises out of flooding in a residential neighborhood in Bothell called Crystal Ridge. The neighborhood was developed in 1987 in what was then unincorporated Snohomish County, and it is undisputed that the neighborhood has an extensive history of flooding. The hearing examiner who approved the preliminary plat for the Crystal Ridge development found, based on the testimony of geotechnical engineer Gordon Denby, that the Crystal Ridge development was "characterized by excessively wet soils due to the geologic conditions which exist in the area[.]" Clerk's Papers at 721. He found that "a surface drain and an interceptor trench or trenches . . . would be necessary" in order to develop the site. Id. On this basis, he concluded, "[t]he simple reality is that this site is not your typical piece of property and that typical drainage standards would probably not adequately protect the public use and interest." As such, the hearing examiner made a comprehensive drainage plan, including the interceptor trench, a requirement of approval of the plat application.

The developer built the interceptor trench and placed a pipe in the trench. The interceptor pipe, which is similar to a french drain, was a perforated pipe buried approximately 12 feet below ground for the purpose of intercepting excess water and conveying it away from the residential development. The interceptor pipe is located within a drainage easement depicted on the plat for the Crystal Ridge development.

3

In 1992, the Crystal Ridge development was incorporated into the City of Bothell. In 2010, the Crystal Ridge Homeowners Association, along with individual homeowners ("Crystal Ridge"), filed suit against the City of Bothell, alleging that the interceptor drain was no longer working properly, and was causing water to concentrate and exit in springs and seeps, damaging properties within the development. Crystal Ridge alleged causes of action for negligence, trespass, nuisance, inverse condemnation, and sought a declaratory judgment that the City of Bothell had assumed responsibility for maintaining the drainage system.

Crystal Ridge moved for summary judgment, seeking a ruling that the City had assumed responsibility for maintaining the drainage system when it annexed the development. The City cross-moved for summary judgment on the same issue. The trial court granted Crystal Ridge's motion, and denied the City's motion. The City filed a notice of appeal, and the court certified the appeal to this court under CR 54(b).[1]

## DISCUSSION

The City's chief argument on appeal is that it did not have a duty to maintain the interceptor pipe at issue in this case because the dedication of a drainage easement to Snohomish County found on the Crystal Ridge plat did not include the interceptor pipe. According to the City, that easement gave Snohomish County a right of ingress and

---

[1] Although the City has appealed six orders of the trial court, it makes no argument as to any orders other than the order granting Crystal Ridge's motion for summary judgment and denying the City's cross motion. As such, the City has abandoned their appeal of the other five orders and we do not address them here.

4

egress to maintain and repair only "stormwater facilities," and the interceptor pipe does not qualify as a stormwater facility. We reject the City's argument and affirm.

The plat for the Crystal Ridge development depicts a "drainage easement" in which the interceptor pipe was located, and states:

> DRAINAGE EASEMENTS DESIGNATED ON THIS PLAT ARE HEREBY RESERVED FOR AND GRANTED TO SNOHOMISH COUNTY FOR THE RIGHT OF INGRESS AND EGRESS FOR THE PURPOSE OF MAINTAINING AND OPERATING STORMWATER FACILITIES

CP at 655, 657. The gravamen of the City's argument is that the interceptor pipe, which was buried twelve feet below ground, was meant to deal with "groundwater" and therefore cannot be part of a stormwater facility, which the City contends deals only with "surface" water.

In support of its argument, the City cites to several provisions of the Snohomish County Code, former chapters 24 and 25. Former chapter 24 is titled "drainage." CP at 666. Its purposes included: "protect[ing] the public from stormwater runoff originating on developing land"; "minimiz[ing] adverse effects of alteration in groundwater quantities, locations, and flow patterns"; and "decreas[ing] drainage related damage to public and private property." CP at 667-68. Former chapter 24 does not define "groundwater," "surface water," "stormwater," or "stormwater facility." It does, however, define "drainage treatment/abatement facilities":

> "Drainage Treatment/Abatement Facilities" means any facilities installed or constructed in conjunction with a drainage plan for the purpose of treatment or abatement of stormwater runoff.

5

CP at 669 (SCC 24.08.120).

The ordinance enacting former chapter 25 of the Snohomish County Code is titled "providing for storm and surface water management." Former chapter 25 was meant to complement and supplement former chapter 24. The legislative findings for chapter 25 incorporate the findings for chapter 24, (SCC 25.01.010), and chapter 25 specifically states that the chapter was to "augment the County's Drainage Ordinance, SCC Title 24[.]" (SCC 25.05.040). (CP at 450). The purposes of former chapter 25 included: "control, accommodate, and discharge storm runoff" and "provide for groundwater recharge[.]" CP at 442. As was the case with former chapter 24, former chapter 25 does not define "groundwater," "surface water," or "stormwater." It does define "drainage facilities":

> "Drainage Facilities," as used in this chapter, shall mean any structural or nonstructural feature, element, or mechanism designed to accommodate storm and surface water runoff.

CP at 444 (SCC 25.02.030).

According to the City, the definitions of "drainage treatment/abatement facilities" in former chapter 24 and "drainage facilities" in former chapter 25 apply only to storm and surface water, and not to groundwater. As a preliminary matter, the City provides no authority defining "groundwater," nor does it provide authority indicating that "groundwater" is excluded from "storm" water as used in former chapters 24 and 25 of the SCC. Moreover, even if the City is correct regarding its interpretation of SCC 24.08.120 and 25.02.030, it is unclear how this helps the City, given the easement at

6

issue here did not mention "drainage treatment/abatement" or "drainage" facilities. Rather, as the City points out, the easement granted Snohomish County a right of ingress and egress to maintain and repair "stormwater facilities."

On the issue of stormwater facilities, former chapter 25 provides the following definition:

> "Storm and Surface Water Management Facilities and Features," as used in this chapter, shall mean any facility, improvement, development, property or interest therein, made, constructed, or acquired for purpose of controlling, or protecting life or property from, any storm, waste, flood or surplus waters, wherever located within the county, and shall include but not be limited to the improvements and authority described in RCW 86.12.020 and Chapters 86.13 and 86.15 RCW.

CP at 456-57 (SCC 25.02.080). The City contends this portion of the code supports its interpretation because "[u]se of the terms 'storm, waste, flood or surplus waters,' coupled with the omission of the term 'groundwater,' indicates that the County did not intend for 'groundwater' facilities to be included in its definition[.]" Reply Brief at 10-11. We reject this argument.

The proper inquiry to determine whether the definition set forth in SCC 25.02.080 applies to the interceptor pipe is not the depth at which the pipe collects excess water; rather, the proper inquiry is whether the interceptor pipe was "constructed . . . for purpose of controlling or protecting life or property from, any storm, waste, flood or surplus waters[.]" CP at 457 (SCC 25.02.080). The record here shows the interceptor pipe was constructed for such a purpose. The hearing examiner who approved the preliminary plat found, based on the testimony of geotechnical engineer Gordon Denby,

7

that the Crystal Ridge development was "characterized by excessively wet soils due to the geologic conditions which exist in the area[.]" CP at 721. He found that "a surface drain and an interceptor trench or trenches . . . would be necessary" in order to develop the site. Id. On this basis, he concluded, "[t]he simple reality is that this site is not your typical piece of property and that typical drainage standards would probably not adequately protect the public use and interest." CP at 725.

Likewise, Denby testified that he observed construction of the interceptor trench where the pipe was located, and that the pipe "benefits the County because it reduces the amount of surface water runoff flowing on and emanating from the site." CP at 296. He further testified that the pipe "definitely protects the public roads and public facilities in the plat" and that without the pipe, "it is likely that water would be flowing out of and around the catch basins on occasions creating a nuisance and hazard during freezing conditions." Id.

This evidence, which is undisputed, shows that the interceptor pipe was "constructed . . . for purpose of controlling, or protecting life or property from, any storm, waste, flood or surplus waters[.]" CP at 457 (SCC 25.02.080). As such, the interceptor pipe fits the definition of stormwater facility, and it was included in the dedication on the Crystal Ridge plat.

Moreover, the City's interpretation that this definition applied only to surface water is belied by the history of the ordinance. Before former SCC 25.02.080 was amended in 1983, it read:

8

> "Storm and Surface Water Management Facilities and Features," as used in this chapter, shall mean any facility, improvement, development, property or interest therein, or other structural or non-structural element, made, constructed, or acquired for the purpose of controlling, or protecting life and safety, natural resources, or property from, any storm, waste, flood, surplus, **or other surface waters** wherever located within the County, and shall include but not be limited to the improvements and authority described in RCW 86.12.020 and chapters 86.13 and 86.15 RCW.

CP at 445-46 (emphasis added). In 1983, the County Council amended the code and removed the clause highlighted above ("or other surface waters"), thereby making it clear that the definition of "Storm and Surface Water Management Facilities" does not apply only to "surface waters." We reject the City's arguments on this issue.

The City advances several other arguments in an attempt to show there was no intent that the interceptor pipe be included in the dedication on the Crystal Ridge plat. We conclude they are without merit. For example, the City notes that the location of the easement for the interceptor pipe also includes a sanitary sewer main; the implication apparently being that if the interceptor pipe was deeded to the County, so was the sanitary sewer, which is an absurd result. But Crystal Ridge has not argued the sanitary sewer fits the Snohomish County Code definition of stormwater facility, and moreover, the plat specifically indicates the easement for the sanitary sewer belongs to the "AWD" (Alderwood Water District).[2]

Likewise, we reject the City's argument about the drainage disclosure requirement. Before the Crystal Ridge plat was approved, the County required the

---

[2] The City also argues that the purpose of the easement at issue in this case was for ingress and egress to repair and maintain a swale, not the interceptor pipe. This argument, however, is largely a response to Crystal Ridge, who contends there were no other drainage instruments located within the easement.

developer to record a document titled "Drainage Disclosure." CP at 472-73. The

drainage disclosure includes the legal description of and tax assessor number for the

Crystal Ridge plat, and gives notice to anyone who looks up property that extensive

drainage control occurred on the plat:

> The filing of this document:
>
> (1) Constitutes the current acknowledgment of the conditions and terms of Plat Approval for the Plat of Crystal Ridge pursuant to the Hearing Examiner's decision dated October 11, 1984, to wit:
>
> That this document has been recorded with the County Auditor disclosing to all the following:
>
> Substantial surface and subsurface drainage controls have been necessary in the development of the subject property, and that special and/or extraordinary drainage controls may be necessary on individual lots.
>
> (2) Constitutes the current owner's acknowledgment of the current terms and conditions under which Approval was granted.
>
> (3) Serves as notice to any heir, successor, assign or prospective purchaser the disclosures and terms and conditions runs with the land pursuant to Section 19.40 SCC and the compliance and/or knowledge are the obligation of any owner of the subject property.

CP at 472.

The City simply asserts, without argument or citation to authority, that "it is clear"

that the disclosure means the owners of individual lots were responsible for

maintenance of the interceptor pipe. The City's interpretation is that this disclosure

"mandates that future 'compliance' with 'drainage controls' on 'individual lots' is 'the

obligation of any owner of the subject property.'" Opening Brief at 13-14. According to

the City, there is no other possible purpose for this disclosure. We disagree. A far more

10

plausible, common-sense interpretation of the "drainage disclosure" is that it was simply intended to disclose to prospective purchasers of the real property that "Substantial surface and subsurface drainage controls" were put in place on the plat.

Additionally, the City appears to argue that there is no evidence the interceptor pipe was actually located within the easement dedicated on the Crystal Ridge plat. But the City's argument is based on two geotechnical reports that discuss a proposed location for a swale drain. From there, the City simply guesses as to where the interceptor pipe might be in relation to the proposed swale drain. This is nothing but speculation. By contrast, Denby testified that he personally observed construction of the interceptor pipe trench, and that it was, in fact, located within the easement.

Finally, the City makes an argument that Crystal Ridge failed to meet the elements of an implied, common law dedication. But this argument rests on the City's premise that there was no statutory dedication because the interceptor pipe did not fit the definition of "stormwater facility."

The brief of amicus curiae Washington State Association of Municipal Attorneys is focused on the potential danger of a holding too broad in this case. The Association notes the fact that municipalities require developers to reserve easements for utilities does not mean that the municipality has placed upon itself a duty to maintain those easements for the benefit of service providers such as Comcast or Puget Sound Energy. The Association also provides an example of water service being provided by multiple water districts from jurisdictions outside of the plat location. The Association

11

argues "[t]he dedication on a plat for utilities to be provided by one of those separate municipalities cannot reasonably be interpreted to require the City to be responsible for the maintenance, inspection, and repair of those facilities that are owned by the ratepayers of those other municipalities." Amicus Brief at 3.

The Association is correct as to both of these examples. The decision in this case, however, does not implicate the Association's concerns because the drainage easement here was specifically granted to Snohomish County for the purpose of the County "maintaining and operating" the stormwater facilities. Moreover, nothing in the opinion indicates a municipality is prohibited from entering into an interlocal agreement with a different municipality delegating any maintenance obligations to the other municipality.

The Association also argues that there is no duty for a municipality to maintain private facilities. We agree, and nothing in our opinion states otherwise. The Association also argues that the interceptor pipe was not included in the easement because it collects groundwater. We reject that argument for the reasons stated above.

Affirmed.

WE CONCUR: